PATRICK KING *vs.* DANIEL L. D. GRANGER, City Treasurer.

PROVIDENCE—DECEMBER 13, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Municipal Corporation. Sewers.*

A city may not be liable for the incapacity of a sewer, when constructed, to serve the purpose then contemplated; but if it subsequently change the grade of neighboring streets, diverting surface-water and sewage from other directions to this sewer, and so overtax its capacity as to cause a retroflux of sewage upon private property through the connection of the latter with the sewer, the city may properly be held liable for the resulting damages.

(2) *Release.*

An instrument in which the signer agrees that no claim shall be made against a city for damages which may be occasioned to his estate, or any property thereon, in any manner by the construction, use, or existence of a connection between said estate and the public sewer, is equivalent to the release required by statute as a condition of making such connection.

Such instrument, however, is to be construed in view of the facts and conditions existing at the time of its execution, together with such other facts and conditions as ought reasonably to be anticipated from the ordinary growth and development of the contiguous territory.

Such instrument is not a release of damages to his estate in consequence of a subsequent change of grade of neighboring highways, by which larger quantities of surface-water and sewage are turned from other directions into said sewer and thence overflow on to the said estate because the capacity of the sewer is overtaxed by this later action of the city.

If the city subsequently desire to drain a much larger territory by said sewer than was originally contemplated, and larger than the sewer is capable of draining, its capacity must be increased.

(3) *Judicial Discretion. Ministerial Duty. Negligence.*

After a city has adopted a plan and constructed its sewers in accordance therewith, judicial discretion ends and ministerial duty begins; it then becomes liable for damages to others resulting from the negligent discharge of, or the negligent omission to discharge such duty.

TRESPASS ON THE CASE against a city for injuries resulting from the overflow on to the plaintiff's land of surface-water

and sewage from a sewer with which the land had been properly connected, this overflow having been caused, since said connection was made, by a change of the grade of neighboring streets whereby such increased quantities of surface water and sewage were diverted from other directions into said sewer as to overtax its capacity. Heard on demurrer to the declaration.

TILLINGHAST, J. The case which the declaration states is briefly this : The city of Providence constructed a sewer in Manton avenue, a public highway, for the purpose of carrying off the surface-water, sewage, and drainage from said avenue and the land adjacent thereto. The plaintiff, who was and is a land-owner on said highway, was assessed his proportional part of the expense of constructing said sewer, which assessment was paid by him. Thereafterwards, on the 9th day of October, 1891, he made application to the commissioner of public works of the city for leave to connect his estate with said sewer for the purpose of taking the drainage and sewage from his estate, which application was duly granted. At the time the sewer was constructed it had sufficient capacity to receive and carry away, and did receive and carry away, without injury to the plaintiff, all the sewage and drainage from said Manton avenue and the land adjacent thereto, including the drainage from the plaintiff's estate. Subsequently to the time when plaintiff connected his premises with said sewer, to wit, in 1895, the city changed the grade of said Manton avenue and of several other streets connected therewith, whereby the surface-water which had formerly flowed in another direction in said streets was turned into said avenue and into the said sewer, which, not having been designed or constructed by said city to receive and discharge the surface-water of said additional streets and the territory adjacent thereto, and being of insufficient capacity for this purpose, became congested and overflowed upon the plaintiff's premises, causing him to be damaged. The plaintiff alleges that the conduct of the defendant, in thus turning said additional surface-water into the sewer,

was wrongful and negligent, and that he is entitled to re-
cover the damages which he has sustained by reason thereof.

The defendant demurs to the declaration, setting up that
said sewer is a part of the sewer system of the city; that it
is not required to construct said sewer of such size and di-
mensions as would carry off all the surface-water, sewage,
and drainage which from time to time after such construction
was or might be turned therein as a part of said system; that
it had the right to turn the surface-water from said streets
into said sewer; that the defendant is not liable for any de-
fect or want of efficiency in the plan of drainage and sewer-
age adopted by it, and also that the defendant is not liable
because the plaintiff had no right to connect his premises
with said sewer, under the statute, except upon executing to
said city a release of all damages which might at any time
happen to such estate in any way resulting from said con-
nection.

In support of the demurrer the defendant's counsel argue
(1) that the only substantive fact upon which the alleged
negligence is based is that said sewer was not of sufficient
capacity to carry off the surface water turned into it by a
change of the grade of certain streets, in addition to the
amount of water which had theretofore been turned into it;
and (2) that there is no substantive difference between the
statements of fact in said declaration and those in *Baxter* v.
*Tripp*, 12 R. I. 310. We think the last named contention is
untenable. The facts in *Baxter* v. *Tripp* were materially
different from those in the case before us. In that case the
declaration alleged that the city wrongfully and negligently
*constructed* a sewer in Lippitt street, and *wrongfully and
negligently used and maintained* the same, whereby the
plaintiff's estate was flooded and damaged. It was neither
alleged nor claimed in that case that after the sewer was
built a large amount or any amount of surface-water, in ad-
dition to that originally intended to be taken care of by the
sewer, was turned into it by changing the grade of the streets
in the vicinity, or otherwise. And the court held that, under
the agreement signed by the plaintiff at the time he applied

for permission to connect his premises with the sewer, said agreement being similar to the one here set up by the defendant in its plea in bar, which we will consider later, the action could not be maintained. So that the question now presented, namely, whether in case a much larger amount of surface-water is turned into a sewer than was contemplated at the time of its construction, and an abutter is injured thereby, he can recover, was not raised or considered in that case. There, the incapacity of the sewer, when constructed, to serve the purpose then contemplated by the city, was the thing complained of; while here, it is the overtaxing of the sewer in the manner aforesaid after its construction. We think that in such circumstances the city may properly be held liable for the damages sustained thereby, and hence that the demurrer to the declaration must be overruled.

(2)   We now come to the defendant's special plea in bar which sets up in substance that, prior to and at the time when the plaintiff connected his premises with said sewer, he executed and delivered to the city a certain instrument in writing agreeing "that no claim for damages which may be occasioned to such estate, or any property thereon, in any manner by the construction, use or existence of such drain or connection, shall be made against the city." To this plea the plaintiff demurs, and we are therefore called upon to determine as to its sufficiency. The particular grounds of demurrer are (1) that the said agreement was not under seal, and that it contains no release to said city; and (2) that the bringing of the plaintiff's action does not constitute a breach of his said agreement, inasmuch as the damages complained of were not occasioned "in any manner by the construction, use or existence of such drain or connection." Plaintiff also demurs generally to said plea, alleging that he is not barred by said agreement from bringing his action.

We think the first ground of demurrer is untenable. For, while it is true that said agreement is not technically a release, yet, as said by Durfee, C. J., in *Baxter* v. *Tripp*, *supra*, where a similar agreement was considered, "it must be held to be at least equivalent to the release required by

statute." See Pub. Laws R. I. cap. 313, § 5, passed March 28, 1873.[1]

We think the second ground of demurrer is well taken. The agreement in question was evidently entered into in view of the facts and conditions existing at the time, together with such other facts and conditions as might and ought reasonably to have been anticipated from the ordinary growth and development of the contiguous territory. That is to say: The plaintiff knew, or was bound to presume when he signed said release, that by reason of the construction of other streets in the immediate neighborhood some additional surface-water might naturally be turned into said sewer. But he did not know, and had no reason to anticipate, that the city would subsequently so change the grade of said Manton avenue, and of several other streets connected therewith, as to turn a large amount of surface-water and sewage, which had formerly flowed in another direction, into said sewer, and thereby cause the same to overflow upon his premises. On the contrary he had the right to presume that the city would not unreasonably tax the capacity of said sewer, so as to cause him damage. If this were not so it would be competent for the city, after laying a sewer and obtaining releases from those who should connect their premises therewith, so to overtax the capacity of the sewer as not only to render it useless to abutters, but also to cause it to become a source of constant annoyance and damage to them. We do not think that the statute, under which the release in this case was given, should be so construed as to permit of such a wrong. It is true the language thereof is quite comprehensive, but it does not necessarily include such a claim as that here counted upon by the plaintiff. And as an abutter is compelled to sign a release in order to enjoy the principal benefit to be de-

---

[1] SEC. 5. When any such assessment shall be made upon any land for the expense of constructing any such sewer, the owner of the land so assessed shall have the right to connect such land with such sewer under such general rules and regulations as said board of public works shall prescribe, upon executing to said city a release of all damages which may at any time happen to such estate in any way resulting from such connection.

rived from the construction of the sewer, we think it should be construed as favorably to him as its terms will reasonably allow. And it is unreasonable to suppose that the General Assembly intended that the release required of an abutter, as a condition of his connecting his premises with the sewer, should absolutely and forever bar him from all claims whatsoever which might subsequently arise by reason of such connection. Suppose, for instance, that the city should neglect the duty of keeping the sewer in proper repair, and the plaintiff should be damaged thereby, could it be reasonably claimed that said release would bar him from recovery? We think not. The city is not absolved from the discharge of its duty in the premises in this regard by reason of the release; nor can it so change the plan which it adopted when the sewer was built as to render the sewer a nuisance to him. Moreover, it would clearly be against public policy to allow the city to shield itself behind an agreement of this sort from the consequence of its own negligence. See the suggestion of Durfee, C. J., in *Baxter* v. *Tripp*, on p. 318.

If the city desires to drain a much larger territory by the use of said sewer than was originally contemplated, and than said sewer is capable of draining, it must increase its capacity. It cannot materially change its plan as to the territory to be drained without also changing its plan as to the size of the sewer.

(3)    For any error in judgment on the part of the city authorities in devising and adopting a plan for taking care of the surface-water and sewage of a given district, or of the city as a whole, many, and perhaps a majority, of the courts hold that no responsibility exists, as in so doing the city is exercising a legislative or quasi-judicial power, and not discharging a merely ministerial duty. But having once adopted a given plan and constructed the sewers in accordance therewith, the judicial discretion ends and the ministerial duty begins. And, like an individual, it then ordinarily becomes liable for damages to others resulting from the negligent discharge or the negligent omission to discharge such duty. *Child* v. *Boston*, 4 Allen, 41.

Finally, we fail to see how the case at bar can be distinguished, on principle, from that of *Inman* v. *Tripp*, 11 R. I. 520. In that case this court held that it was an invasion of private property for the city so to grade its streets as to collect the water from a wide area and then empty it, charged with all its miscellaneous filth, upon the plaintiff's land. In the case at bar the declaration shows that the city, by changing the grade of several streets, has unreasonably overtaxed the sewer with which the plaintiff's premises are rightfully connected, and has thereby caused a retroflux of sewage through said connection and upon his premises, to his damage. And we fail to see how this act of the city is any less an invasion of private property than was the act of the city in the case just mentioned.

The defendant's demurrer to the declaration is overruled and the plaintiff's demurrer to the defendant's plea in bar is sustained.

Case remitted to the Common Pleas Division for further proceedings.

*Irving Champlin*, for plaintiff.

*Francis Colwell, City Solicitor of the city of Providence,* for defendant.