STATE of Indiana, DEPARTMENT OF MENTAL HEALTH, and Central State Hospital, Appellants (Defendants Below),

v.

Peggy Sue ALLEN and David Glen Allen, Appellees (Plaintiffs Below).

No. 2-1280A431.

Court of Appeals of Indiana, Fourth District.

Oct. 21, 1981.

---

Linley E. Pearson, Atty. Gen., G. Richard Potter, Deputy Atty. Gen., Indianapolis, for appellants.

W. Scott Montross, Townsend, Hovde, Townsend & Montross, Indianapolis, Frank Campbell, Campbell Kyle & Proffitt, Noblesville, for appellees.

YOUNG, Judge.

The State of Indiana, Department of Mental Health and Central State Hospital appeal the trial court's denial of their motion for summary judgment. Appellants, by this interlocutory appeal, contend they are immune from liability pursuant to Ind. Code 34–4–16.5–3(5), (6), (7) and (9).

We reverse.

Harry E. Ferguson, a criminal defendant, was ordered by the Honorable Richard J. Groover, Judge of the Hendricks Circuit Court, to be committed to the Department of Mental Health, and specifically, to Central State Hospital, for treatment pursuant to the Indiana Criminal Sexual Deviancy Act, Ind.Code 35–11–3.1-1 et seq. Judge Groover specifically found that Harry E. Ferguson was treatable as a criminal sexual deviant. Prior to ordering Ferguson committed to Central State Hospital for treatment, the Judge ordered the appointment of physicians to examine Ferguson, and ordered the commitment of Ferguson for observation, evaluation, and diagnosis to the Department of Mental Health and Central State Hospital for a period of not more than 120 days. Dr. James J. Wright, M.D., psychiatric consultant, and Dr. Harold E. Stoner, M.D., staff psychiatrist, reported their findings and conclusions to the Hendricks Circuit Court prior to Judge Groover's Commitment Order. After Ferguson's initial commitment to Central State Hospital in September of 1977, the staff personnel commenced a program of psychiatric testing and treatment. As part of Ferguson's psychiatric treatment, Ferguson was permitted to have home visits with his family away from Central State Hospital. These home visits with his family began at Christmas, 1977, for a few hours, then progressed to overnight visits, and then weekend visits beginning during the first part of April, 1978.

On Friday, May 12, 1978, after Ferguson was released on a weekend pass from Central State Hospital, he attacked and raped the plaintiff, Peggy Sue Allen, at her home

in Mooresville, Indiana. The Allens assert that the employees of the Department were negligent in releasing Ferguson and that the Department's actions were the proximate result of the Allens' injuries and damages. The State responds that it is immune from liability because of the governmental immunities granted by Ind.Code 34–4–16.-5–3 set out below.

Ind.Code 34–4–16.5–3 provides, in part: A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

. . . . .

(5) the initiation of a judicial or administrative proceeding;

(6) the performance of a discretionary function;

(7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, unless the act of enforcement constitutes false arrest or false imprisonment;

. . . . .

(9) the act or omission of someone other than the governmental entity employee; . . . .

■■■ The State argues it is immune because the loss resulted from the performance of a discretionary function. Ind.Code 34–4–16.5–3(6). In deciding this issue, the threshold question is whether the function of the governmental entity involved is ministerial or discretionary. "A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and, if so, in what particular way . . . ." *Adams v. Schneider*, (1919) 71 Ind.App. 249, 124 N.E. 718, 720. A ministerial act is one which a person performs in a given state of facts in a prescribed manner, in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done.

*Galey v. Board of Commissioners*, (1910) 174 Ind. 181, 91 N.E. 593, 594 (quoting *Flournoy v. Jeffersonville*, (1861) 17 Ind. 169, 174). A person's duties in performance of an act after he has determined whether and how it should be done are ministerial, and for negligence in such performance he may be liable. *Adams, supra*, 124 N.E. 718, 720. "The discretionary/ministerial distinction hinges on the demarcation between the decision to act and the acts or duties flowing from that decision."[1] *Mills v. American Playground Device Co. and City of Gas City*, (1980) Ind.App., 405 N.E.2d 621, 626.

■■■ The State argues its action was discretionary based upon the parole section of the Criminal Sexual Deviancy Act. Ind. Code 35–11–3.1–24 (since repealed). Because the statute placed some judgment in the Department, they contend Ferguson's release was a discretionary act. Nowhere has the State alleged factually for the purposes of summary judgment that Ferguson was paroled. To the contrary, it appears that he was temporarily released as part of his treatment. *See* Ind.Code 35–11–3.1–25 (since repealed) which provided for privileges "not incompatible with the person's care, supervision or treatment or unreasonably dangerous to the community."

Appellees argue that "[o]nce the decision was made by the defendants to temporarily release Peggy Allen's assailant, all acts subsequent thereto became ministerial in nature for which the State has a duty to exercise reasonable care." They do not seem to dispute that the initial decision to release was discretionary. *Cf. Board of Commissioners v. Briggs*, (1975) 167 Ind. App. 96, 337 N.E.2d 852. The decision to release as part of the treatment was discretionary and was permitted under the Criminal Sexual Deviancy Act. Assuming that the act of release was ministerial, appellees did not present at trial, nor argue on ap-

---

1. This demarcation is often difficult to determine and has been subjected to some criticism. For example, Prosser states:

It seems almost impossible to draw any clear and definite line, since the distinction, if it exists, can be at most one of degree. "It would be difficult to conceive of any official act, no matter how directly ministerial,. that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail."

W. Prosser, Law of Torts § 132 (4th ed. 1971).

peal, any factual issues relating to acts of negligence in the ministerial release. We are not free on appeal to speculate as to the conditions of release or the question of negligence in the failure to comply with such conditions by the Department or Ferguson.

Appellees filed no response to the defendant's Motion for Summary Judgment. "When a motion for summary judgment is made and supported as provided in [Trial Rule 56], an adverse party may not rest upon the mere allegations ... of his pleading, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." T.R. 56(E). No facts have been set forth by appellees showing a genuine issue regarding the allegedly negligent ministerial release of Ferguson. In fact, the record does not demonstrate any response to the State's Motion for Summary Judgment. The only possible exception is that at the hearing, facts (or a response of some kind) were presented. A transcript of the hearing was not provided.

The trial court erred by failing to grant summary judgment for the State. The plaintiffs'-appellees' failure to respond with an issue of fact regarding the alleged negligent ministerial release made summary judgment appropriate for the defendant. Trial Rule 56(E) requires that in such a case as this, summary judgment shall be entered against plaintiff. We must reverse.

Reversed and remanded for proceedings consistent with this opinion.

CHIPMAN, P. J., and MILLER, J., concur.